IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE MAE ("Billy") RIGDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| V. | § | |
| | § | 3:06-CV-1064-K |
| MORNINGSTAR FOODS, INC. AND | § | |
| MORNINGSTAR FOODS, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions:

(1) Defendants Morningstar Foods, Inc. and Morningstar Foods, LLC's ("Morningstar") Motion for Summary Judgment (Doc. No. 23),

(2) Morningstar's Motion to Strike Plaintiff's Expert Report (Doc. No. 40),

(3) Plaintiff Willie Mae ("Billy") Rigdon's ("Rigdon" or "Plaintiff") Motion to Strike Defendants' Summary Judgment Evidence (Doc. No. 49),

(4) Plaintiff's Motion for Leave to File Sur-Reply (Doc No. 44),

(5) Morningstar's Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. No. 41), and

(6) Plaintiff Motion for Leave to File Amended Complaint (Doc. No. 27).

The Court **GRANTS** Morningstar's Motion for Summary Judgment because Plaintiff is unable to demonstrate a genuine issue of material fact. Except where

specifically granted herein, all remaining motions are **DENIED as moot.**

**I. Background**

Billy Rigdon complains that she was discriminated against by her employer, Morningstar, because of her race. Specifically, Rigdon claims that Morningstar manager Diane Snow failed to promote her because she is black. Rigdon also alleges that Snow's actions toward black employees created a hostile work environment, and that Morning Star intentionally inflicted emotional distress in violation of state law.

Rigdon was hired by Morningstar in December 1998 as a member of the Pricing Department. After four months as an employee in the Pricing Department, Rigdon was promoted to a supervisor position where she supervised four to six pricing analysts. In approximately October, 2001, Snow was hired by Morningstar as the new manager of the Pricing Department. As manager, Snow was Rigdon's superior. Rigdon claims that Snow asked her to step down from her supervisor position because, Snow allegedly told her, the department had no need for a supervisor position. Rigdon claims that Snow stripped her of many of her duties, transferred those duties to white employees, and generally favored white employees to black employees. Specifically, Rigdon complains that when a supervisor position eventually came open at Morningstar, a white employee, Lexie Brink, received the promotion instead of Rigdon. Additionally, Rigdon complains that when two manager positions in the Pricing Department came open, Emily Whitaker and Stephanie Miller, both white employees, received the promotions even though

Rigdon was more qualified.

Rigdon filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on February 26, 2006. After receiving a right to sue letter from the EEOC, Rigdon filed this suit on June 15, 2006. Rigdon asserts claims of race discrimination under 42 U.S.C. § 2000e-2 et seq. ("Title VII"). Rigdon contends that she has also pled her race discrimination claims under 42 U.S.C. § 1981 ("Section 1981"). Morningstar claims that Rigdon's pleadings are inadequate to state a Section 1981 claim. For purposes of this opinion, the Court assumes Rigdon has pled her race claims under both Title VII and Section 1981. Rigdon also asserts a state law claim for intentional infliction of emotional distress ("IIED").

**II. Summary Judgment**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment

evidence showing the existence of a genuine fact issue for trial. *Id*. at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III. Defendants' Motion for Summary Judgment

Morningstar moves for summary judgment, contending that Rigdon cannot raise a genuine issue of material fact with respect to any of her claims. Therefore, Morningstar argues, summary judgment is appropriate as to Rigdon's Title VII claim, Section 1981 claim, and IIED claim.

Morningstar claims summary judgment is appropriate on Rigdon's race discrimination claims because they are barred by the statute of limitations. Alternatively, Morningstar contends that summary judgment is appropriate because Rigdon has no legally sufficient summary judgment evidence to support any of her claims. For purposes of this opinion, the Court assumes, without deciding, that Rigdon's claims are not barred by the statute of limitations.

#### A.) Applicable Legal Standards

Under Title VII, an employer cannot discriminate against an individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of such individual's race. 42 U.S.C. § 2000e-2(a)(1). The relevant Title VII inquiry in this case is whether Morningstar intentionally discriminated against Rigdon

because of Rigdon's race.  *See Johnson v. Louisiana,* 351 F.3d 616, 621 (5th Cir. 2003), *citing United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983).  To prevail on a Title VII claim, a plaintiff must first demonstrate a *prima facie* case of discrimination.  *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 352 (5th Cir. 2005).  To establish a *prima facie* case of discrimination, a plaintiff generally must show that 1.) she is within a protected class, 2.) she was qualified for her position, 3.) she suffered an adverse employment decision, and 4.) she was replaced by someone outside the protected class, or treated less favorably than similarly situated employees outside the protected class.  *See Smith v. City of Jackson, Mississippi,* 351 F.3d 183, 196 (5th Cir. 2003), *aff'd,* 544 U.S. 288 (2005); *Sanstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002).

If the plaintiff demonstrates a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Keelan,* 407 F.3d at 341; *Machinchick,* 389 F.3d at 352.  If the defendant meets its burden, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either 1.) that the defendant's reason is not true, but is instead a pretext for discrimination, or 2.) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic.  *Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003).

### B.) Failure to Promote

In January 2006, Rigdon learned that three white Morningstar employees—Lexie Brink, Emily Whitaker, and Stephanie Miller—were all receiving promotions. Rigdon claims that she was not promoted because Diane Snow discriminated against her because of her race. The Court assumes, without deciding, that Rigdon is able to meet the elements of a *prima facie* case. Consequently, the burden shifts to Morningstar to articulate a legitimate, nondiscriminatory reason for its decision not to promote Rigdon.

### 1. Morningstar's Promotion of Lexie Brink

Morningstar claims that Snow promoted Brink to the position of Pricing Supervisor because Snow believed Brink was the most qualified employee for the job. In support of its claim, Morningstar points to Snow's affidavit. In her affidavit, Snow says she promoted Brink because Brink had a college degree and Rigdon did not, she believed that Brink had broader experience in accounting functions, and she believed that Brink was "more adept at analyzing problems, isolating issues, developing solutions, and creating and/or implementing the solutions." Because Morningstar has articulated a legitimate, nondiscriminatory reason for its decision to promote Brink instead of Rigdon, the burden shifts to Rigdon to demonstrate that Morningstar's stated reason is merely pretext for discrimination.

### a.) Rigdon's Evidence of Pretext

Rigdon attempts to demonstrate pretext in two ways. First, she argues that she was "clearly better qualified" for the promotion than Brink. Second, Rigdon argues that several comments made by Snow demonstrate that Morningstar's proffered reason is merely pretext for unlawful race discrimination.

### i.) Rigdon's Evidence She Was "Clearly Better Qualified"

Rigdon argues that she was "clearly better qualified" for the promotion than Brink. In a failure to promote case, a plaintiff can raise a genuine issue of material fact by showing that she was "clearly better qualified" for the position than the person outside of the protected class; evidence that a plaintiff was simply more qualified than the younger employee is not sufficient. *See Eberle v. Gonzalez*, No. 06-50954, 2007 WL 1455928 at *7 (5th Cir. May 18, 2007) (applying "clearly better qualified" standard in a failure to promote age discrimination case). The plaintiff must establish that she was *"clearly* better qualified." *Id.* This standard requires more than mere speculation. *Id.* The bar is set high for this kind of evidence. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 347 (5th Cir. 2001). The disparities in qualifications must be of "such weight and significance that no reasonable person, in the exercise of impartial judgment," could have denied the plaintiff the promotion. *See Ash v. Tyson*, 546 U.S. 454, 457 (2006) (approving similar language while rejecting the requirement that the disparity in qualifications be so apparent as virtually to "jump off the page and slap you in the

face").

Rigdon claims that she was "clearly better qualified" than Brink. Rigdon claims that at the time Brink was promoted, Rigdon had 15 years accounting experience, and Brink had only 3 years of part-time experience. Additionally, Rigdon points out that she had more seniority with Morningstar—five years with the company compared to Brink's four years with the company. Morningstar responds by arguing, among other things, that it was significant to the company that Brink had a college degree while Rigdon did not. Furthermore, Morningstar argues that Rigdon's claim is based on nothing more than a mere subjective belief that she was better qualified.

The Court concludes that the evidence is insufficient to support an inference that Rigdon was "clearly better qualified" than Brink. It is undisputed that Brink had a college education and Rigdon did not. Rigdon has offered no evidence to counter Morningstar's claim that a college degree was important for the position to which Brink was promoted. Morningstar was entitled to make a business decision to promote an individual with superior educational qualifications instead of an individual with more on-the-job experience. The Court is not in a position to second-guess such a decision. The Court concludes, based on the summary judgment evidence, that no reasonable juror could find that Rigdon was "clearly better qualified" for the promotion than Brink.

### ii.) Comments Made by Snow

Rigdon also argues that Snow made comments in the workplace that demonstrate that she was motivated by race in her decision not to promote Rigdon. Specifically, Rigdon claims that on one occasion Snow told another female black employee, Felicia Turner, that she looked like "Buckwheat," the character from The Little Rascals. Additionally, Rigdon claims that Snow once asked her to smell Turner's hair and said that "'you people' use chemicals in your hair."

Morningstar responds by arguing that Snow's comments are merely "stray remarks" that are not probative of discrimination. In order for Snow's comments to be probative of discrimination, Rigdon must show that the comments were (1) race-related, (2) proximate in time to the adverse action, (3) made by an individual with authority over the relevant employment decision, or someone in a position to influence the decision, and (4) related to the employment decision. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 - 78 (5th Cir. 2003); *Brown v. CSC Logic, Inc.* 82 F.3d 651, 655 (5th Cir. 1996). Fundamentally, the question is whether a remark made by a coworker or supervisor could support an inference that an adverse employment action was taken against the plaintiff based on her race. The Court concludes that Snow's alleged comments are insufficient to support an inference than Rigdon was not promoted because of her race. Specifically, there is no evidence that any of the comments were in any way related to the decision not to promote Rigdon. Consequently, the Court

concludes that summary judgment is appropriate as to Rigdon's claim that she should have been promoted instead of Brink.

### 2. Morningstar's Promotions of Emily Whitaker and Stephanie Miller

Rigdon claims that she should have been promoted to Pricing Manager in early 2003 instead of either Emily Whitaker or Stephanie Miller. Morningstar responds by arguing that Rigdon only complained of not being promoted to the position received by Brink in her pleadings, and that it is now too late to complain about not being promoted to the positions received by Whitaker and Miller. The Court agrees with Morningstar's position. Rigdon's complaint specifically complains of a failure to be promoted to the position received by Brink. Even construing Rigdon's complaint broadly, it is insufficient to give Morningstar fair notice that she is complaining about not receiving a promotion to the positions received by Whitaker and Miller. Alternatively, Rigdon offers no evidence establishing that she failed to receive these promotions because of her race, other than the evidence which the Court has already concluded is legally insufficient.

### B. Obstacles to Promotion

In addition to her complaint about Morningstar's failure to promote her, Rigdon also complains that Snow took a variety of actions against her because of her race, and claims that the actions were designed to make it impossible for her to advance in the company. Rigdon complains that Snow failed to inform her of potential promotions,

gave her negative evaluations, denied her training opportunities, and generally disadvantaged her in the work place because she was black. Rigdon, in her brief to the Court, provides the following laundry list of complaints about Snow:

> - Diane Snow did not provide training continuing through 2006[;]
>
> - Diane Snow excluded Billie Rigdon from attendance at seminars through 2006[;]
>
> - Diane snow held meetings while Billie Rigdon was out on PTO, but would postpone meetings for white employees continuing to 2006[;]
>
> - Diane Snow held secretive, closed-door meetings with employees not under her direct supervision. These meetings included frequent meetings with Lexie Brink, who at the time was supposed to be reporting to her supervisor, Emily Whitaker continuing through 2006[;]
>
> - Diane Snow played favorites with the white employees and provided career-building assistance for them, to the exclusion of African-American employees[;]
>
> - Diane Snow kept African-American employees out of the communication loop. She would notify Billie Rigdon of price changes at the last minute, keep her out of the loop, when other employees and Lexie Brink were given an entire month to effect similar price changes[;]
>
> - Diane Snow would also completely fail to notify Billie Rigdon of changes causing uncomfortable issues with customers and designed to make Billie look bad[;]
>
> - Diane Snow slighted African-American employees and excluded them from company social courtesies. When Dean Food employees were introduced to Morningstar Foods personnel, none of the senior African American employees were introduced while Lexie [Brink] was introduced as a supervisor, a position she did not hold at the time[;]
>
> - Diane Snow provided a poor review in 2004 that required intervention of senior management and Human Resources. Portions of the Review

were corrected and it became final on February 10, 2004 but the review created an obstacle to promotion in the company and in the Pricing Department.

Morningstar responds by arguing, among other things, that even if Rigdon's allegations are true, none of the complained of actions constitute a materially adverse action. *See Burlington Northern & Sante Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006). Given the vagueness of Rigdon's allegations as outlined above, Morningstar may be correct that some or all of the complained of actions do not rise to the level of being materially adverse. However, for purposes of this opinion the Court will assume that, taken together, Snow's actions constitute a materially adverse action and that Rigdon is able to establish a *prima facie* case with respect to the complaints outlined above. Consequently, the burden shifts to Morningstar to articulate a legitimate, nondiscriminatory reason for Snow's actions.

**1. Morningstar's Legitimate Nondiscriminatory Reason**

Morningstar argues that none of the actions Rigdon complains of were based on race. Instead, Morningstar says that Snow simply had a "harsh management style." Morningstar claims that "The undisputed evidence is that [Snow] treated Caucasian employees in the same arguably harsh way." Morningstar points to the testimony of a white employee, Stephanie Miller, who testified that Snow treated all employees, including whites, in a condescending manner. Miller testified that Snow could "make you feel like you were two feet tall and want to crawl under your desk." Furthermore,

Morningstar says that any preferential treatment toward Brink was a product of the fact that Snow was "grooming" Brink for a promotion for reasons unrelated to her race. Because Morningstar has articulated a legitimate, nondiscriminatory reason for its actions, the burden shifts to Rigdon to show the existence of a genuine issue of material fact.

### 2. Rigdon's Evidence of Pretext

Rigdon responds by arguing that Snow's actions were directed at black employees because of their race. In support of this assertion, Rigdon points to her own affidavit and deposition testimony. In her affidavit, Rigdon says that Snow would "stand over" black employees while they were working, yell at black employees, and criticize black employees. Construing the facts in a light most favorable to Rigdon, as we must for purposes of summary judgment, the Court assumes that Snow took the actions alleged by Rigdon. That, however, only begs the question of whether Snow's actions were motivated by racial animus.

Rigdon points to the opinion of four black former Morningstar employees in support of her assertion that Snow's actions were motivated by race. Rigdon claims that Artie Freeman, Delores King, Edith Cooper, and Cassandra Dunbar told her that they all believed they too had been discriminated against because of their race, and that they also believed that Rigdon had been the target of racial discrimination. Rigdon, however, did not offer any affidavits or other summary judgment evidence from any of these

individuals. Rigdon presents the anticipated testimony of these individuals by way of her own affidavit where she explains what they told her. Morningstar correctly objects to this evidence as hearsay. The Court sustains the objections and does not consider the statements for the truth of the matter asserted. A careful review of the summary judgment evidence shows that Rigdon's only remaining summary judgment evidence that she was discriminated against is her own subjective belief. Such evidence, standing alone, is insufficient to raise a genuine issue of material fact. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). Consequently, the Court concludes that summary judgment is appropriate as to Rigdon's complaints that Morningstar created obstacles to her promotion because of her race.

### C.) Hostile Work-Environment

Rigdon also contends that Snow's conduct created a hostile work-environment in violation of Title VII. To prevail on a claim for race discrimination based on the existence of a hostile work-environment, a plaintiff must show that the environment was so racially hostile that it altered the terms and conditions of her employment. *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002). Rigdon concedes that no person at Morningstar, other than Snow, did anything to create a racially hostile work environment. Additionally, the Court has already concluded that Rigdon has offered legally insufficient evidence that Snow's actions were motivated by race. At best, Rigdon has shown that Snow created a hostile work-environment for all employees regardless

of their race. Title VII, however, does not create a cause of action for employees that are subjected to hostile work-environment for reasons completely unrelated to a protected category. Consequently, the Court concludes that summary judgment is appropriate as to Rigdon's hostile work-environment claim.

### D.) Intentional Infliction of Emotional Distress

Morningstar also moves for summary judgment on Rigdon's claim of intentional infliction of emotional distress. To recover on an IIED claim, a plaintiff must show that: (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe. *Hoffmann-La Roche v. Zeltwanger,* 114 S.W.3d 438, 445 (Tex. 2004). Perhaps the most demanding element for the plaintiff is the requirement that the defendant's conduct be "extreme and outrageous." Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993).

It is now well settled under Texas law that IIED is a "gap filler" tort. *See generally Hoffmann-La Roche,* 114 S.W.3d at 438-50. It was "created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized

theory of redress." *Id.* at 447, *citing Standard Fruit and Vegetable Co., v. Johnson,* 985 S.W.2d 62, 68 (Tex. 1998). In this case, Rigdon had a "recognized theory of redress" in the form of Title VII. The fact that Rigdon has been unable to carry her evidentiary burden does not entitle her to reassert her claim as an IIED claim. *Id.* (stating that "If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim). Alternatively, Snow's alleged conduct may have been in bad taste, but it does not rise to the level of being "atrocious" or "utterly intolerable in a civilized community." Consequently, the Court agrees with Morningstar the summary judgment is appropriate as to Rigdon's IIED claim.

## IV. Conclusion

Because Rigdon is unable to raise a genuine issue of material fact on any of her claims, the Court concludes that summary judgment is appropriate. Accordingly, Morningstar's Motion for Summary Judgment is **GRANTED** and Rigdon's case is **DISMISSED** *with prejudice.*

**SO ORDERED.**

Signed March 25th, 2008.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE